[Sac. No. 7545.   In Bank.   June 23, 1964.]

RICHARD HERGENRETHER,  a Minor, etc., et al., Plain-
tiffs and Appellants, v. ROY EAST et al., Defendants
and Respondents.

William W. Coshow, Earl F. Hedlund and William B. Boone for Plaintiffs and Appellants.

Hagar, Crosby & Rosson and Edwin A. Heafey, Jr., as Amici Curiae on behalf of Plaintiffs and Appellants.

Newton, Braun & Goodrich, Newton & Braun and William J. Braun for Defendants and Respondents.

PEEK, J.—Plaintiffs George Hergenrether and Richard Hergenrether, father and minor son, appeal from a judgment for defendants notwithstanding verdicts for plaintiffs in an action for personal injuries sustained in an automobile accident resulting from the negligent operation of defendants' vehicle by an unapprehended and unidentified thief.

The defendants Roy East and Robert Collier were employed by defendant Carl Christy, a Stockton roofing contractor, to work on a construction job near Redding. On two prior occasions they had been in Redding on their employer's business and on the instant occasion had spent the previous two evenings there. At about 4:30 o'clock on the afternoon of July 12, 1961, when work for that day had been completed, East and Collier drove into Redding in Christy's 2-ton truck in search of food and cheaper lodgings which, they had been advised, they could find on California Street. Their use of the truck for this purpose had been authorized by Christy.

When East, who was the driver and had control of the truck, parked the vehicle on California Street he left the doors of the truck unlocked and the keys in the ignition. Personal property, including a portable radio, was left in the cab of the truck, and some $3,000 worth of roofing equipment, guns and a barrel of gasoline were left in the bed of the truck. They spent the evening within the neighborhood, ate at a chop suey establishment, drank at a bar, and bought beer at a liquor store. They registered at a cheap hotel in the immediate vicinity and before checking in returned to the truck to get their personal gear. They again left the vehicle parked as before with the doors unlocked and the key in the ignition.

Some time during the evening the truck was stolen. At approximately 1 on the following morning it was observed heading south from Redding on Highway 99. At that point the highway was a two-lane road and the truck with its unknown driver was weaving from side to side across the center dividing line of the highway. Topping the crest of a hill the truck again veered to the wrong side of the center line and collided head on with the northbound vehicle in which plaintiffs were riding. Both plaintiffs were seriously injured. The driver of the truck escaped without being identified.

As will hereinafter appear, the character of the neighborhood wherein East parked the vehicle and left it exposed to theft is critical to a proper resolution of the issues which are presented. Hence the evidence of record bearing thereon must be viewed in accordance with the well-established rules on appeal from judgments notwithstanding the verdict. ■ In *McFarland* v. *Voorheis-Trindle Co.*, 52 Cal.2d 698, we said at page 703 [343 P.2d 923]: ''We are bound by the familiar rule stated in *Neel* v. *Mannings, Inc.* 19 Cal.2d 647, 649, 650 [122 P.2d 576]: 'It appears to be the well-established law of this state that the power of the trial court to set aside a verdict and enter a contrary judgment is absolutely the same as its power to grant a nonsuit. [Citations.] Therefore, a motion for judgment *non obstante veredicto* may properly be granted ''when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.'' [Citation.]' ''

In view of the foregoing the evidence submitted by plaintiffs is most significant. The then mayor testified that the neighborhood in which the truck was parked was the ''skid row'' of Redding; that it was a ''blighted area and certainly easily identifiable. I think anyone—any stranger coming into our city who has had the unfortunate experience of driving down it [California Street] ... would recognize the problem and see what type of area it was, and what type of people frequented the area.'' Later in his testimony he stated that California Street had been a ''very well established skid row'' for more than 20 years; that there were several persons who had been arrested as many as 100 times only to be released and returned to the area; that there were many others who had been arrested ''time after time'' only to be released; and that the advisability of continuing to make arrests with almost immediate releases had been questioned by law enforcement agencies. Other witnesses testified that the arrests in the main were for drunkenness, disturbing the peace, vagrancy, disorderly conduct and also for some automobile thefts; that there was a ''tremendous congregation'' of such persons usually ''milling'' about the streets and that the situation then existing was one of great concern to local authorities. Typically, the business places within the area consisted of pawn shops, secondhand stores, surplus stores, a rescue mission, card rooms, a liquor store, numerous bars and vacant buildings. The unlocked truck with ignition keys exposed was parked in the midst thereof.

After plaintiffs rested their case in the trial court all defendants moved for nonsuit, which was granted as to Collier only, apparently on the ground that he had no control over the vehicle. The other defendants immediately rested their cases, evidently relying on the testimony of East extracted on his examination under section 2055 of the Code of Civil Procedure. The jury returned verdicts for each plaintiff and the appeal is from the judgment notwithstanding such verdicts.

The problem in the instant case is a familiar one to us. In *Richards* v. *Stanley,* 43 Cal.2d 60 [271 P.2d 23] we considered the nature of the risk of harm imposed on others in leaving a vehicle unattended in a somewhat similar factual situation. We stated at page 65: ''In one sense the problem presented involves the duty of the owner of an automobile so to manage it as not to create an unreasonable risk of harm to others. It bears emphasis, however, that when Mrs. Stanley left the car it was in a position where it could harm no one,

and no harm occurred until it had been taken by a thief. Thus a duty to prevent such harm would involve more than just the duty to control the car, it would involve a duty to prevent action of a third person. Ordinarily, however, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another. [Citations.]'' It was concluded that, under the circumstances present in *Richards* the foreseeability of a risk of harm, standing alone, did not as a matter of law create a duty on the part of the owner of a vehicle to protect against injuries to third persons on the highways caused by the negligent driving of one who, finding the keys negligently left in the ignition by the owner, steals the vehicle.

However, *Richards* would not bar the door to recovery in all cases. Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons. Illustrative thereof we noted at page 66 of *Richards*: ''In the present case Mrs. Stanley did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it (see Restatement, Torts, § 302, illus. 7), nor did she leave it in charge of an intoxicated person as did defendant in *Morris* v. *Bolling*, 31 Tenn.App. 577 [218 S.W.2d 754].''

Again special circumstances were found to justify the imposition of a duty in *Richardson* v. *Ham*, 44 Cal.2d 772 [285 P.2d 269]. There the defendant left unattended and unlocked a 26-ton bulldozer which was stolen for a joyride by three inebriates who were able to get the equipment under way but could not control it on a terrifying voyage of destruction. Special circumstances were also found to exist in *Murray* v. *Wright*, 166 Cal.App.2d 589 [333 P.2d 111], where a used car dealer *purposely* left keys in the ignition locks of cars parked on his lot so that anyone who purported to be a customer, or anyone who, in common with others, had knowledge of this practice, could start and drive the vehicle from the lot. The important factor emphasized in *Richardson* was the enormous potentiality of harm once a bulldozer is put in motion, and in *Murray* the facility with which a wrongdoer could appropriate an automobile as constituting a virtual invitation to theft.

■ The special circumstances present in *Richardson* and *Murray,* and those suggested in *Richards* are not, of course, the only circumstances which justify the imposition of liability—rather each case must be considered on its own facts to determine whether the joint effect of them in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk.

■ In the instant case there are several factors which, we are persuaded, require the imposition of a duty to plaintiffs which was breached by defendants Christy and East. Moreover, and unlike *Richards,* where plaintiff appealed from a judgment for defendants and *Richardson,* where there was an appeal from an order granting plaintiffs a new trial after verdicts for defendants, the present case is here, as stated, after judgment notwithstanding plaintiffs' verdicts. Hence any factual controversies must be resolved in plaintiffs' favor. When so viewed the significant circumstances disclosed are: (1) the vehicle was left in a neighborhood which was frequented by persons who had little respect for the law and the rights of others; (2) the neighborhood was heavily populated by drunks and near drunks; (3) the vehicle was intended to be left there for a relatively long period of time—from midafternoon to the following morning—and, of particular importance, it was intended that it would be left for the entire night; and (4) the vehicle was a partially loaded 2-ton truck, the safe and proper operation of which was not a matter of common experience, and which was capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled.

Although the vehicle here was not left in charge of an intoxicated person as suggested in *Richards* as a governing circumstance, it manifestly was made easily available to persons who were known or should have been known to defendants to be intoxicated. Another factor herein approaches that deemed to be determinative in *Richardson.* While the truck did not have the potentiality of doing harm as in the case of the bulldozer, nevertheless it possessed unusual potentiality. Finally, while the invitation to appropriate the vehicle may not have been as apparent as in *Murray,* still the parking of the truck during daylight hours while drunks, derelicts and vagrants who frequented the neighborhood could observe that the vehicle was unlocked and the key in

the ignition, and continuing such parking throughout the night, constituted an unusual invitation to theft.

The judgment for respondents is reversed, and the trial court directed to enter its judgment on the verdicts.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

Respondents' petition for a rehearing was denied July 22, 1964.