[Civ. No. 45500. Second Dist., Div. Five. Feb. 27, 1976.]

WILLIAM G. ENDERS, Plaintiff and Appellant, v.
APCOA, INC., Defendant and Respondent.

**COUNSEL**

Memel, Jacobs & Gersh, Weissburg & Aronson, Stanley K. Jacobs and Jay D. Gould for Plaintiff and Appellant.

Haight, Lyon, Smith & Dickson and Roy G. Weatherup for Defendant and Respondent.

## Opinion

**STEPHENS, J.**—Plaintiff William G. Enders appeals from a summary judgment entered in favor of defendant Apcoa, Inc., Division of I.T.T. Consumer Services Corporation, the operator of a parking lot.

### *Facts*

By affidavit, Apcoa parking lot attendant Manny Chalearpiamnugit declared: "On November 20, 1972 at approximately 2:20 PM., Myrna Ziff brought her Pontiac Firebird to the [Apcoa parking lot in Beverly Hills] to be parked. I parked the vehicle and left the keys in the ignition.[1] Thomas Brown was also working that day. I left at approximately 5:10 PM. The car was still there. When I came in the next day, Thomas Brown told me that the car had been stolen at about 6:00 PM the night before."

Sometime between 5:10 and 6 p.m. on November 20, defendants Scot Selwyn and Douglas Winterrowd, two minors, stole the Ziff automobile from the Apcoa parking lot. On November 21, 1972, at approximately 7:40 p.m., plaintiff Enders, a police officer, was engaged in pursuing the stolen automobile which was being driven by Selwyn when it collided with the vehicle being operated by plaintiff, injuring plaintiff.

Based upon the foregoing facts, plaintiff filed suit against Apcoa (operator of the parking lot), Ziff (owner of the stolen automobile), Selwyn and Winterrowd (the alleged thieves), and the parents of the two youths (for failing to exercise reasonable care in controlling their "incorrigible" children). Apcoa filed a motion for summary judgment, contending that California case law establishes that Apcoa, as a matter of law, owes no duty of care to plaintiff and therefore that plaintiff's complaint fails to state a cause of action against Apcoa. The trial court granted Apcoa's motion for summary judgment on June 21, 1974, and this appeal followed.

---

[1]By answers to interrogatories, Apcoa described the practice followed on this particular lot as follows: "When a customer arrives . . .. a two part claim ticket is time stamped. The larger portion of the ticket is given to the customer and the smaller stub is placed on the car. The car is then parked in a space by an attendant. When the customer returns. he or she gives the attendant the claim stub and the attendant stamps the ticket out and charges the customer accordingly. The customer then picks up the car himself. The keys are left in the ignition [as they were in the instant case]."

*Contentions*

Appellant contends that the trial court erred in granting Apcoa's motion for summary judgment in that: (1) the immediate case falls within an established exception to the general rule that the owner or bailee of a vehicle who leaves the keys in its ignition does not owe a duty of care to a person injured by a thief's negligent operation of the vehicle; or, alternatively, (2) public policy considerations compel that the general rule denying the existence of such a duty be reversed.

For the reasons hereinafter discussed, we conclude that the judgment should be reversed.

*Discussion*

Since the parties base their positions upon "key-in-the-ignition" arguments and we believe that the law on this subject should be clarified after trial of this case, we first address ourselves to this issue:

The leading California case on this subject is *Richards* v. *Stanley,* 43 Cal.2d 60 [271 P.2d 23], where the defendant car owners[2] parked their automobile on a street and left it "unattended and unlocked," with the key in the ignition, in violation of a local ordinance. The automobile was stolen by another defendant who negligently caused it to collide with the plaintiff's motorcycle, injuring the plaintiff. The trial court granted the defendant car owners' motion for a nonsuit. The Supreme Court affirmed the nonsuit judgment, finding that because the ordinance specifically stated that its provisions could not be applied in any civil action, the plaintiff was not among the class of persons for whose benefit the ordinance had been enacted, thus the ordinance could not be the basis of a duty owed by the defendant car owners to the injured plaintiff. The court further observed that without a statute establishing such a duty, "it has generally been held that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it." (*Id.,* at p. 63.) The court determined that leaving the keys in an unlocked and unattended vehicle does not give rise to a foreseeable risk that the vehicle will be stolen by a thief who is an incompetent driver. (*Id.,* at

---

[2]While these defendants in *Richards* were the owners of the automobile rather than the bailees, the later case of *Brooker* v. *El Encino Co.,* 216 Cal.App.2d 598 [31 Cal.Rptr. 24] expressly recognized that the *Richards* rule is applicable when the vehicle is stolen from a private parking lot while it is in the possession of a bailee.

p. 66.) However, while holding that the factual situation in *Richards* did not result in a foreseeable risk of harm to the plaintiff, the court noted that "special circumstances" could yield a different result. The court identified two factual situations in which "special circumstances" would increase the degree of the risk to such an extent as to result in an unreasonable, foreseeable risk: (1) leaving the vehicle in the possession and control of an intoxicated person; or (2) leaving the vehicle unlocked and unattended, with the key in the ignition, in front of a school where children could be expected to tamper with it. (*Id.*)

In *Richardson v. Ham*, 44 Cal.2d 772 [285 P.2d 269] (one year after *Richards*), the Supreme Court utilized the "special circumstances" exception. There, the defendants had left two 26-ton, unattended, unlocked, and readily startable bulldozers at a construction site. Distinguishing both the magnitude and the foreseeability of this risk from that present in *Richards,* the court held that the *Richardson* defendants had a duty to the general public, stating: ". . . . The risks arising from intermeddling with bulldozers . . . are entirely different from those arising from the driving of an automobile by a thief. Bulldozers are relatively uncommon, and curious children or others attracted by them ordinarily will not know how to operate them. An intermeddler who starts a bulldozer accidentally or otherwise may not be able to stop it, and the potentialities of harm from a 26-ton bulldozer in uncontrolled motion are enormous, particularly when it is left on top of a mesa from which it can escape and injure persons and property located below." (*Id.,* at p. 776.)

"Special circumstances" were also found to exist in *Murray v. Wright,* 166 Cal.App.2d 589 [333 P.2d 111], where the defendants operated a used car lot. In order to encourage the general public to examine and operate the cars which were for sale, the defendants intentionally left keys in the ignition of the automobiles parked on their unattended lot. This policy was a matter of common knowledge in the community. A thief stole a car from the lot and negligently caused it to collide with the vehicle in which the plaintiffs were riding, injuring the plaintiffs. On appeal from a judgment of dismissal following the sustaining of defendants' general demurrer without leave to amend, the court reversed, finding that *Murray* presented "a factual situation far more serious" than that which was presented in *Richards.* (*Id.,* at p. 592.)

*Brooker v. El Encino Co.,* 216 Cal.App.2d 598 [31 Cal.Rptr. 24] involves a factual situation which is similar to that in the immediate case.

In *Brooker*, the owner drove his car to a restaurant, where an attendant parked the car in a private lot and left it unlocked, unattended, with its key in the ignition. The vehicle was stolen and the thief caused it to crash into the plaintiffs' car while he was attempting to evade the police. On appeal, the court affirmed the summary judgment in favor of the defendant restaurant, finding that no "special circumstances" existed which would warrant the imposition of a duty owed by the defendant bailee to the plaintiffs.[3]

In *Hergenrether* v. *East,* 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164], "special circumstances" were found to exist within a different factual context. There, defendant's employees parked a two-ton truck, unlocked and with the keys in the ignition, on a street in a "skid row" area. Once again, the vehicle was stolen and then was involved in an accident in which the plaintiffs were injured. In reversing a judgment for defendants notwithstanding verdicts for plaintiffs, the Supreme Court identified the "special circumstances" which distinguished that case from the no-duty rule of *Richards,* as follows: ". . . . (1) the vehicle was left in a neighborhood which was frequented by persons who had little respect for the law and the rights of others; (2) the neighborhood was heavily populated by drunks and near drunks; (3) the vehicle was intended to be left there for a relatively long period of time—from midafternoon to the following morning—and, of particular importance, it was intended that it would be left for the entire night; and (4) the vehicle was a partially loaded two-ton truck, the safe and proper operation of which was not a matter of common experience, and which was capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled." (*Id.,* at p. 445.)

The most recently reported "key-in-the-ignition" case is *England* v. *Mapes Produce Co.,* 238 Cal.App.2d 120 [47 Cal.Rptr. 506], where defendant operated an unsupervised farm labor camp at which approximately 100 Mexican laborers were provided room and board; defendant's practice was to keep its trucks on its property with keys in the ignition at all times; and a laborer stole a pickup truck which he subsequently caused to collide with the plaintiffs' automobile. On appeal, the court affirmed the trial court's judgment in favor of the defendant, holding that the inability of the Mexican laborers, as a class,

---

[3]The Supreme Court denied plaintiffs' petition for hearing. but with three members of that court voting to grant the petition. In the instant case. the minute order reflects that the trial judge felt "bound by the definitive decision in *Brooker*," but invited "plaintiff. if so advised. to seek appellate review in light of the fact that three Supreme Court justices had voted in favor of the petition for hearing in that case."

to drive trucks properly did not establish a "special circumstance" as a matter of law.

Plaintiff contends that the instant case falls within the "special circumstances" exception developed in the foregoing cases. What are the "special circumstances" here?

First, plaintiff asserts the "community knowledge" and "known availability" factors which were found to exist in *Murray, supra* (166 Cal.App.2d 589). Plaintiff alleges that the availability of unlocked, readily startable vehicles at the Apcoa parking lot was known in the community and this knowledge constitutes a "special circumstance." In the immediate case, unlike *Murray, supra,* the vehicle was not left in an unattended lot. In addition, we take judicial notice that it is a common practice for parking lots to require that their patrons leave their keys in their vehicles so that attendants may move the vehicles when necessary. The lack of care thereafter, however, may give rise to an action premised upon negligence. ■ While the act of leaving keys in the ignition may not, by itself, constitute negligence, that fact together with the failure to guard against car theft may impose liability for foreseeable results.

■ Plaintiff also relies upon the fact that defendant had only one attendant on duty at the time of this theft. In *Richardson, Hergenrether,* and *Murray,* discussed *ante,* the vehicles had been left entirely unattended at the time of the theft; however, we cannot say, as a matter of law, that the duty of care reasonably imposed under parking lot bailment may not be affected by the number of attendants on duty. One attendant on duty may under certain circumstances be as ineffectual in guarding against theft as no attendant at all.

■ Plaintiff asserts that the history of prior thefts of autos from defendant Apcoa's parking lots constitutes a "special circumstance." Apcoa acknowledges that during the 3-year period preceding the theft of the Ziff automobile, approximately 12 vehicles had been stolen from Apcoa's 68 parking lots, 50 of which operated similarly to the one here involved. Included in these 12 thefts was an earlier theft from the lot in the instant case. This factor, when measured against the degree of care taken, could assist in establishing the "special circumstances" necessary to demonstrate that the risk of injury to members of the general public was foreseeable to this defendant. Certainly it was foreseeable that one of the risks involved in recovering the stolen vehicle was danger of injury to the police officer who was under a duty to recover it.

■ The final "special circumstance" claimed by plaintiff is empirical data demonstrating that it is foreseeable that a stolen vehicle will be involved in an accident. (See: Peck, *An Exercise Based on Empirical Data: Liability for Harm Caused by Stolen Automobiles,* 196 Wis.L.Rev. 909; Note 17, 12 U.C.L.A. L.Rev. 1260, 1264.) Without presently considering the validity of this data, we observe that although this factor may reflect upon the validity of the general rule established by *Richards,* it does not by itself constitute a "special circumstance" which establishes liability in "key-in-the-ignition" cases.

■ The purpose of the "special circumstances" requirement is to establish that the tortious conduct was foreseeable to the defendant. ■ We conclude that the facts alleged are adequate to present a question of negligence on the part of Apcoa. ■ Negligence alone, however, as religiously pointed out in the cases cited above, does not impose liability absent the existence of a duty of care owed by the alleged wrongdoer to the person injured or to a class of which the injured party is a member. *Brooker* concluded that there was no such duty where, during the police chase of the stolen car, damages resulted to a third party. *Brooker* (at p. 602) misreads *Richards* where it states: "The risk that the thief might drive negligently or recklessly to avoid apprehension was a risk also present in *Richards* v. *Stanley, supra,* 43 Cal.2d 60." In *Richards* there was no allegation of police involvement at the time of the negligent driving by the thief. At that moment, the thief was apparently merely negligent in his driving and was not acting with the added incentive of escape.

■ Looking then to the "special circumstances" (provided for in *Richards*) which go to *duty,* not to the *negligence* of leaving the keys in the car, we have no doubt that the police intervention was foreseeable. Likewise, we believe that it was foreseeable that during that police intervention the thief would attempt evasion from arrest. The negligent driving during such a course of attempted escape would be expected and therefore patently foreseeable. Where it is foreseeable that the manner of driving will be negligent, the likelihood of injury to the arresting officer and/or to innocent third parties is also foreseeable. Under such circumstance, the result of injury being foreseeable, there arises the duty not to conduct oneself in such a negligent way as to be a cause of the injury; in such a situation, liability will be imposed absent an intervening factor which would fall within the ambit of unforeseeability. (See *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 220-221 [157 P.2d 372, 158 A.L.R. 872] (Traynor, J., conc. opn.).)

The latest expression of the California Supreme Court on this question has been set forth in *Vesely* v. *Sager,* 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151]. Citing *Richardson* v. *Ham, supra,* 44 Cal.2d 772, with approval, the court in *Vesely* stated: " . . . Under these principles an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. [Citations.] Moreover, 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest.2d Torts, § 449; *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at pp. 241-242; . . . *McEvoy* v. *American Pool Corp., supra,* 32 Cal.2d 295, at p. 299.)" (*Id.,* at pp. 163-164.)

While we have doubts about the admissibility of the empirical data presented by plaintiff, we take notice of the widely published warnings by law enforcement offices against leaving a key in the ignition. A parking lot operator is no less knowledgeable of these risks and dangers than a private citizen, and perhaps should be held to a greater degree of responsibility because of the volume of cars left in his care.

In expressing our conclusion that special circumstances may here be established, we follow the precepts of *Richards,* leaving to the trier of fact the actual determination of whether under the factual circumstances a failure to exercise due care resulted.

The judgment is reversed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied March 17, 1976, and respondent's petition for a hearing by the Supreme Court was denied April 28, 1976.