[No. F047375. Fifth Dist. Sept. 27, 2006.]

STEVEN MAY, an Incompetent Person, etc., et al., Plaintiffs and Appellants,
v.
NINE PLUS PROPERTIES, INC., Defendant and Respondent;
CSAC EXCESS INSURANCE AUTHORITY, Intervener and Appellant.

**COUNSEL**

Law Offices of Tony J. Tanke, Tony J. Tanke; Law Offices of Gary L. Simms, Gary L. Simms; The Drivon Law Firm, Laurence E. Drivon, Davey L. Turner; Tabak Law Firm and Stewart M. Tabak for Plaintiffs and Appellants.

Porter, Scott, Weiberg & Delehant, Carl L. Fessenden, Brendan J. Begley and Thomas L. Riordon for Intervener and Appellant.

Hancock Rothert & Bunshoft, Duanne Morris, Max H. Stern, William S. Berman, Kate Cutler; Thayer, Harvey, Gregerson, Hedberg & Jackson, Dale H. Thayer and Graham S. Lopez for Defendant and Respondent.

**OPINION**

HILL, J.—Absent " 'special circumstances,' " the owner or bailee of a motor vehicle has no duty to protect third persons against the possibility a thief will steal the vehicle and injure them with it. (*Avis Rent a Car System, Inc. v. Superior Court* (1993) 12 Cal.App.4th 221 [15 Cal.Rptr.2d 711] (*Avis*).) Leaving the keys in the ignition, and the vehicle unlocked and unattended, is not by itself one of these special circumstances. (*Ibid.*) The issue here is whether additional factors exist sufficient to change this from an ordinary key-in-the-ignition case into one that fits the special circumstances exception to the general rule. The trial court concluded there were no special circumstances, and so granted defendant's motion for summary judgment. We agree and will affirm.

## FACTS AND PROCEEDINGS

The essential facts are undisputed.

Don and Denise Lillegard own Nine Plus Properties, Inc., which, in turn, owns and operates a Maaco Auto Painting & Body Works franchise in Modesto (Maaco). Maaco has a shop where it repairs and paints cars and trucks, and an adjoining storage lot where it parks the vehicles when it is not working on them. There usually are about 40 vehicles in the lot, but may be as few as 20 or as many as 100. Many are left in the lot overnight.

Maaco's practice originally was to lock the vehicles and keep the keys on a board in the office. But during a fire in the lot in 1994, a fireman commented to Don Lillegard that "it would be nice to be able to move those cars." At that point, Maaco began leaving the vehicles unlocked, with the keys in the ignition.

The lot is surrounded by a chain link fence topped by three strands of barbed wire and reinforced with weather-resistant strips in the links to make it more difficult to climb. An infrared motion detection system is installed just inside the fence line, and monitored during nonbusiness hours by a security company that notifies police if an intrusion occurs. There are video cameras trained on different parts of the lot, and warning signs posted on the outside of the fence. The shop also is alarmed, as are the doors leading from the shop to the storage area.

Early in the morning of July 27, 2002, Joshua Corralejo got into the Maaco lot by unknown means and stole a 1996 GMC pickup by crashing it through the fence. The next night, Corralejo smashed the truck into the front of a cigarette store, stole several cartons of cigarettes, and drove away after attempting to run down a witness. The day after that, on July 29, 2002, two deputies from the Stanislaus County Sheriff's Department observed Corralejo in the truck and pulled him over. Corralejo backed the truck into the deputies' patrol car, disabling it, and sped away. The deputies radioed for assistance, and several officers from the Modesto Police Department responded. One of the officers spotted the truck and gave chase. The others, including Sergeant Steven May, then tried to get into a position to intercept it. Corralejo ran a red light and collided with May's patrol car at a speed of about 60 miles per hour. Corralejo was killed in the collision and May severely and permanently injured.

In the 10 months preceding the theft, the alarm systems in Maaco's shop and lot had transmitted a total of 13 intrusion calls to the security company. A Toyota had been stolen from the lot in September of 2001. And on July 12, 2002, just two weeks before Corralejo took the truck, someone had stolen a Mustang by crashing it through the locked gate. After that, Maaco started parking a forklift in front of the gate at night.

Soon after the theft of the Mustang, police officers suggested to the Lillegards that Maaco should stop leaving the keys in vehicles parked overnight in its storage lot. But Maaco continued the practice; the truck Corralejo stole was unlocked and had the keys in the ignition.

On June 25, 2003, Steven May through his wife Diana May as his guardian ad litem, and Diana May individually, filed the present action against Maaco for negligence. They later amended the complaint to add a claim for products liability against the manufacturer of Sergeant May's patrol car, the Ford Motor Company.

On March 16, 2004, the trial court granted the CSAC Excess Insurance Authority (CSAC) leave to intervene in the action, and CSAC filed a complaint in intervention the same day. CSAC alleged it was responsible for paying workers' compensation benefits to Sergeant May on behalf of the City of Modesto to the extent those benefits exceeded $1 million, as they had by then. On this basis, CSAC joined in the Mays' claim that Maaco was liable in negligence for their injuries.

Maaco filed a motion for summary judgment on May 3, 2004, asserting it had no duty as a matter of law to protect third persons against the actions of a car thief.[1] The Mays and CSAC opposed the motion on the principal ground the two previous car thefts from Maaco's lot, and the suggestion from police it remove the keys, were sufficient to invoke the special circumstances exception to the usual rule of nonliability in key-in-the-ignition cases. The trial court found there were no special circumstances, however, and granted Maaco's motion.

---

[1] Maaco also asserted, as an additional ground for its motion, the common law doctrine known as the "firefighter's rule." The rule, which applies as well to police officers, provides generally that "a member of the public whose conduct precipitates the intervention of a police officer [does not] owe a duty of care to the officer with respect to the original negligence that caused the officer's intervention." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 538 [34 Cal.Rptr.2d 630, 882 P.2d 347]; see *Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1061–1063 [77 Cal.Rptr.2d 202, 959 P.2d 360].) For reasons that will appear, we need not address this theory.

The Mays then moved for reconsideration based on what they represented was new evidence of the similarities between the Mustang and GMC pickup thefts, and of Maaco's location in a high-crime area. The court denied the motion.

Judgment was entered on December 29, 2004. The Mays filed a timely notice of appeal.

## DISCUSSION

### Decisions by the California Supreme Court

The first decision to address the issue of duty in key-in-the-ignition cases was *Richards v. Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23] (*Richards*). The defendant in *Richards*, Mrs. Stanley, left her car parked on a street in San Francisco, unlocked and unattended, with the key in the ignition. The car was stolen and, while being driven by the thief, collided with a motorcycle driven by Richards. Richards sued Stanley for negligence, alleging her carelessness had induced the thief to take the car in the first place. The trial court ruled the complaint failed to state a cause of action, and granted Stanley's motion for nonsuit. (*Richards, supra*, 43 Cal.2d at pp. 61–62.)

The Supreme Court, in upholding the judgment, characterized the determinative issue as one of duty. "[I]t is necessary to consider the scope of the duty of the owner of an automobile to control his property for the protection of persons on the public streets." (*Richards, supra*, 43 Cal.2d at p. 63.) "[I]t has generally been held," the court observed, "that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it." (*Ibid.*) It is not foreseeable, the court concluded, that a car thief will be an incompetent driver, or at least the thief is no more likely to be an incompetent driver than one to whom the owner knowingly entrusts the car.

"The problem is not answered by pointing out that there is a foreseeable risk of negligent driving on the part of thieves. There is a foreseeable risk of negligent driving whenever anyone drives himself or lends his car to another. That risk has not been considered so unreasonable, however, that an owner is negligent merely because he drives himself, or lends his car to another, in the absence of knowledge on his part of his own or the other's incompetence.

Moreover, by leaving the key in the car the owner does not assure that it will be driven, as he does when he lends it to another. At most he creates a risk that it will be stolen and driven. The risk that it will be negligently driven is thus materially less than in the case in which the owner entrusts his car to another for the very purpose of the latter's use.

"In one sense the problem presented involves the duty of the owner of an automobile so to manage it as not to create an unreasonable risk of harm to others. It bears emphasis, however, that when Mrs. Stanley left the car it was in a position where it could harm no one, and no harm occurred until it had been taken by a thief. Thus a duty to prevent such harm would involve more than just the duty to control the car, it would involve a duty to prevent action of a third person. Ordinarily, however, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another. [Citations.] . . .

"In the present case[,] Mrs. Stanley did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it (see Restatement, Torts, § 302, illus. 7), nor did she leave it in charge of an intoxicated passenger . . . [citation]. By leaving the key in her car she at most increased the risk that it might be stolen. Even if she should have foreseen the theft, she had no reason to believe that the thief would be an incompetent driver. In view of the fact that the risk of negligent driving she created was less than the risk she might intentionally have created without negligence by entrusting her car to another, and in the light of the rule that she owed no duty to protect plaintiff from harm resulting from the activities of third persons, we conclude that her duty to exercise reasonable care in the management of her automobile did not encompass a duty to protect plaintiff from the negligent driving of a thief." (*Richards, supra,* 43 Cal.2d at pp. 65–66.)

■ The court then went on to consider, and reject, Richards's contention the existence of a duty in key-in-the-ignition cases is properly a question for the trier of fact. "When . . . the existence of a duty rests on the reasonable foreseeability of injury to the plaintiff, it may become primarily a question for the jury unless reasonable minds cannot differ. Necessarily involved in submitting the case to the jury, however, is a preliminary determination that, granted a foreseeable risk, a duty arises. On the other hand, there are many situations involving foreseeable risks where there is no duty. . . . Determinations of the duty issue as a matter of law adversely to the plaintiff are particularly common in situations similar to that in the present case, in which the defendant's responsibility for the activities of third persons is involved." (*Richards, supra,* 43 Cal.2d at pp. 66–67.)

It would be anomalous, the court said, to impose greater liability on a vehicle's owner for the negligent acts of a thief than is imposed on the owner by statute for the negligent acts of a permissive user. (*Richards, supra*, 43 Cal.2d at pp. 67–68, citing Veh. Code, former § 402, now Veh. Code, §§ 17150 & 17151.)[2]

A year later, in *Richardson v. Ham* (1955) 44 Cal.2d 772 [285 P.2d 269] (*Richardson*), the court found the sort of special circumstances to which it had alluded in *Richards* (e.g., a car left in front of a school with the keys in it, or left in the control of an intoxicated passenger). *Richardson* involved a bulldozer left overnight at a construction site at the top of a mesa, without an easily installed lock that would have prevented it from being started. Some intoxicated young men started the bulldozer, which then caused considerable damage to the nearby property. The court distinguished this situation from the one in *Richards* in that both the type of foreseeable intervening conduct by a thief, and the risks created by such conduct, were appreciably greater.

"Automobiles do not arouse curiosity, and ordinarily the only appreciable risk that they will be set in motion if they are left unattended arises from the possibility of their being stolen. The record in the present case, on the other hand, shows that defendants' bulldozers aroused curiosity and attracted spectators, while they were in operation as well as while they were parked for the night. Moreover, curious persons had been known to climb on them, and it could reasonably be inferred that they were attractive to children when left unattended at the end of the working day. The evidence is therefore sufficient to justify the conclusion that there was a reasonably foreseeable risk that defendants' bulldozers might be tampered with when left unattended.

"Given this foreseeable risk of intermeddling, the question is presented whether defendants were under a duty to exercise reasonable care to prevent intermeddlers from putting their bulldozers in operation. . . . The risks arising from intermeddling with bulldozers . . . are entirely different from those

---

[2] Vehicle Code sections 17150 and 17151, respectively, provide: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner." (Veh. Code, § 17150.)

"The liability of an owner [or] bailee of an owner . . . imposed by this chapter . . . is limited to the amount of fifteen thousand dollars ($15,000) for the death of or injury to one person in any one accident and, subject to the limit as to one person, is limited to the amount of thirty thousand dollars ($30,000) for the death of or injury to more than one person in any one accident and is limited to the amount of five thousand dollars ($5,000) for damage to property of others in any one accident." (Veh. Code, § 17151, subd. (a).)

arising from the driving of an automobile by a thief. Bulldozers are relatively uncommon, and curious children or others attracted by them ordinarily will not know how to operate them. An intermeddler who starts a bulldozer accidentally or otherwise may not be able to stop it, and the potentialities of harm from a 26-ton bulldozer in uncontrolled motion are enormous, particularly when it is left on top of a mesa from which it can escape and injure persons and property located below. The extreme danger created by a bulldozer in uncontrolled motion and the foreseeable risk of intermeddling fully justify imposing a duty on the owner to exercise reasonable care to protect third parties from injuries arising from its operation by intermeddlers. [Citations.]" (*Richardson, supra*, 44 Cal.2d at p. 776.)

In *Hergenrether v. East* (1964) 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164] (*Hergenrether*), the Supreme Court explained the exception to the *Richards* rule as follows: "Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons." (*Hergenrether, supra*, at p. 444.) In *Hergenrether*, two construction workers parked their two-ton truck, full of equipment, in what was plainly a blighted area of town, unlocked and with the key inside. The truck was stolen, and subsequently involved in an accident that seriously injured the plaintiffs. The trial court granted judgment for the defendants notwithstanding the verdict. The Supreme Court, in reversing the judgment, identified several factors amounting to "special circumstances": "(1) the vehicle was left in a neighborhood which was frequented by persons who had little respect for the law and the rights of others; (2) the neighborhood was heavily populated by drunks and near drunks; (3) the vehicle was intended to be left there for a relatively long period of time—from midafternoon to the following morning—and, of particular importance, it was intended that it would be left for the entire night; and (4) the vehicle was a partially loaded 2-ton truck, the safe and proper operation of which was not a matter of common experience, and which was capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled." (*Hergenrether, supra*, 61 Cal.2d at p. 445.)

Similar circumstances led the Supreme Court to reach the same conclusion in *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*), which involved a large flatbed truck parked overnight in an unfenced lot in a high-crime area, with the door unlocked, the window open, and the keys inside. The operative test in key-in-the-ignition cases, the court explained, is the foreseeability of harm. "The 'special circumstance' to which we look in determining whether the

owner operator of a vehicle owes a duty to third parties in the manner in which the vehicle is secured when not in use is nothing more than a test of foreseeability of harm. In negligence a defendant may be liable for injuries caused by his failure to use reasonable care in situations in which he owes a duty to the injured person. '[I]n considering the existence of "duty" in a given case several factors require consideration including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" [Citations.]' [Citation.] Inasmuch as foreseeability of harm is in most cases, this one included, a question of fact [citation], and triable issues of fact as to foreseeability were present here, the motions by defendants for summary judgment should not have been granted." (*Palma, supra*, 36 Cal.3d at p. 186, fn. omitted.)

The last Supreme Court opinion to address the "special circumstances" exception was *Ballard v. Uribe* (1986) 41 Cal.3d 564 [224 Cal.Rptr. 664, 715 P.2d 624] (*Ballard*). Like *Richardson, Hergenrether*, and *Palma, Ballard* involved a construction vehicle: an "aerial manlift" consisting of a basket mounted on a boom ladder attached to the bed of a truck. The lift was unsafe to use—a stabilizing cable had been removed for repairs—but it was left nonetheless in a construction yard with the keys in the ignition, the controls unlocked, and no warning signs. A worker at the site, unaware of its condition, attempted to use the lift and was injured. A jury returned a verdict for the worker, and the owner of the boom appealed, claiming, among other things, that the trial court had given an incorrect instruction regarding an owner's duty of care. The Supreme Court found the error was harmless, because, under *Richardson* and *Hergenrether*, the owner clearly owed a duty to potential users of the lift. ". . . The *Richardson* decision itself—the first case to apply the 'special circumstances' exception in recognizing duty—establishes that the significant danger posed by the unauthorized use of heavy construction machinery warrants recognition of a duty on the part of machinery owners to use due care to prevent the injurious misuse of the machinery by others. The *Richardson* court concluded that in light of the dangers involved, the imposition of liability on the machinery owner for negligence in controlling unauthorized use might have a salutary effect on public safety and would not impose an undue burden on the machinery owner. That conclusion is as applicable to the owner of an aerial manlift as it was to the owner of the bulldozer involved in *Richardson*." (*Ballard, supra*, 41 Cal.3d at p. 573.)

Notably, the courts in both *Palma* and *Ballard* acknowledged that the central premise in *Richards*—that a car thief is no more likely than a permissive user to drive negligently—had been questioned by some appellate courts in light of empirical data to the contrary (see *Kiick v. Levias* (1980) 113 Cal.App.3d 399, 404–406 [169 Cal.Rptr. 859] and *Hosking v. San Pedro Marine, Inc.* (1979) 98 Cal.App.3d 98, 104–105, fn. 4 [159 Cal.Rptr. 369] (*Hosking*)), but they declined to reconsider *Richards* under the circumstances. (*Ballard, supra*, 41 Cal.3d at p. 572, fn. 5; *Palma, supra*, 36 Cal.3d at p. 186, fn. 13.)

### Decisions by the California Courts of Appeal

Thus, the four cases in which the Supreme Court has found special circumstances to exist—*Richardson* (bulldozer), *Hergenrether* (two-ton truck), *Palma* (flatbed truck), and *Ballard* (aerial manlift)—all involved heavy construction vehicles left unattended and available for use by persons unfamiliar with their operation. Several decisions by the Courts of Appeal have discussed what types of things constitute special circumstances in a situation like the present one involving an ordinary passenger vehicle, particularly one in which the thief was attempting to evade the police. We begin with the one police-pursuit case that arguably supports the Mays' position.[3]

The plaintiff in *Enders v. Apcoa, Inc.* (1976) 55 Cal.App.3d 897 [127 Cal.Rptr. 751] (*Enders*) was a police officer who was injured when a stolen car he was pursuing collided with his patrol car. The stolen car had been taken 24 hours earlier from a parking lot operated by Apcoa. As it did routinely, Apcoa had left the car in its lot with the doors unlocked and the

---

[3] There was no police pursuit in the one other passenger car decision where the court found a duty. The plaintiffs in *Murray v. Wright* (1958) 166 Cal.App.2d 589 [333 P.2d 111] alleged they were injured when their car collided with a car driven by Brown, who had taken it earlier from the defendants' used car lot. The complaint also alleged that the defendants routinely left the keys in all the cars on their lot; that this practice was common knowledge within the surrounding community; that the lot was always open and unattended; that the defendants left the keys in the cars purposely to encourage the general public to inspect and test drive them; that the defendants made no effort to determine whether persons who test drove the cars were competent to do so; and that Brown was not competent because he was intoxicated. The trial court sustained the defendant's demurrer without leave to amend, in reliance apparently on *Richards*. The appellate court reversed. It held the allegations in the complaint, if true, were sufficient to state a cause of action for negligence. As in *Richardson* (the only other key-in-the-ignition case to have been decided at that point), the used car lot had, in effect, enticed or invited incompetent drivers to use its cars. (See *Avis, supra*, 12 Cal.App.4th at p. 230.)

key in the ignition. The trial court granted summary judgment in favor of Apcoa in reliance on *Richards*.

The appellate court reversed. It found special circumstances based on several factors. First, Apcoa's practice of leaving keys in parked cars was a matter of common knowledge. Second, there was only one attendant on duty at the time of the theft, which, the court said, "may under certain circumstances be as ineffectual in guarding against theft as no attendant at all." (*Enders, supra,* 55 Cal.App.3d at p. 904.) Third, 12 cars had been stolen from Apcoa's 68 parking lots in the three years preceding the theft, including one from the same lot. Fourth, the plaintiff presented empirical evidence to show it is foreseeable a stolen vehicle will be involved in an accident. Of this last form of evidence the court said, somewhat enigmatically: "Without presently considering the validity of this data, we observe that although this factor may reflect upon the validity of the general rule established by *Richards*, it does not by itself constitute a 'special circumstance' which establishes liability in 'key-in-the-ignition' cases." (*Enders, supra,* 55 Cal.App.3d at p. 905.) The court then went on to conclude:

"The purpose of the 'special circumstances' requirement is to establish that the tortious conduct [of the thief] was foreseeable to the defendant. We conclude that the facts alleged are adequate to present a question of negligence on the part of Apcoa. Negligence alone, however, as religiously pointed out in the cases cited above, does not impose liability absent the existence of a duty of care owed by the alleged wrongdoer to the person injured or to a class of which the injured party is a member. . . .

"Looking then to the 'special circumstances' (provided for in *Richards*) which go to *duty*, not to the *negligence* of leaving the keys in the car, we have no doubt that the police intervention was foreseeable. Likewise, we believe that it was foreseeable that during that police intervention the thief would attempt evasion from arrest. The negligent driving during such a course of attempted escape would be expected and therefore patently foreseeable. Where it is foreseeable that the manner of driving will be negligent, the likelihood of injury to the arresting officer and/or to innocent third parties is also foreseeable. Under such circumstance, the result of injury being foreseeable, there arises the duty not to conduct oneself in such a negligent way as to be a cause of the injury; in such a situation, liability will be imposed absent an intervening factor which would fall within the ambit of unforeseeability. [Citation.]" (*Enders, supra,* 55 Cal.App.3d at p. 905.)

In reaching this result, the *Enders* court disagreed with an earlier police-pursuit decision holding there was no duty. *Brooker v. El Encino Co.* (1963)

216 Cal.App.2d 598 [31 Cal.Rptr. 24] (*Brooker*) likewise involved the theft of a car from a private parking lot, where the cars were routinely left unlocked, with the keys inside. And, as in *Enders*, the plaintiffs were injured by the stolen car while the thief was fleeing in it from police. They argued they were owed a duty of care by the parking lot owners because it was reasonably foreseeable the thief would attempt to avoid arrest. The *Brooker* court rejected this argument, noting that the risk a thief would drive negligently or recklessly to avoid apprehension had also been a consideration in *Richards*. (*Brooker, supra,* 216 Cal.App.2d at p. 602; see also *Holder v. Reber* (1956) 146 Cal.App.2d 557 [304 P.2d 204] [applying *Richards* in a police-pursuit case].)

The *Enders* court took exception to this statement, noting there was no evidence in *Richards* of a police pursuit. While the *Enders* court's premise was correct, i.e., there had been no police pursuit in *Richards*, the conclusion the court drew from it mistook the nature of the *Richards* foreseeability test, as we will discuss shortly.

*Enders* was followed by two more police-pursuit cases in which the courts held that evasive action by the thief was *not* a special circumstance exception to the *Richards* rule. In *Hosking, supra,* 98 Cal.App.3d 98, the manager of San Pedro Marine drove his work truck to his mother-in-law's house at night and left it unattended in a nearby alley, with the lights on, the door open, the key in the ignition, and the engine running, while he went into her house for a few minutes. The truck was stolen, and it later collided with the plaintiff's car while the thief was attempting to flee the police. The plaintiff, in support of her claim the accident was reasonably foreseeable, offered evidence that the theft took place one block from a high school; that the type of truck was popular with juvenile auto thieves; that a vehicle is more likely to be stolen at night; that stolen vehicles are likely to be involved in a chase; and that the rate of accidents is higher for stolen vehicles than for others. The trial court found there were no special circumstances, and thus, no duty, and granted nonsuit for the defendants. (*Hosking, supra,* 98 Cal.App.3d at pp. 100–101.) The appellate court affirmed. "In the instant case . . . there were no 'special circumstances' creating a greater potential of foreseeable harm than would exist in any case where a driver leaves keys in a car. . . . The statistical data about car thefts . . . goes to the viability of the *Richards* rule itself and not to the foreseeability in the instant case, [citation][.] The fact that the events took place near a high school would not amount to a 'special circumstance.' If we reached such a conclusion, any metropolitan area in California would be in the 'special circumstance' category. The potential of foreseeable juvenile crime was not increased by the manager's conduct here. In *Enders* there was

a significant history of thefts from Apcoa's parking lots, including the particular parking lot in question. In addition, it was known that Apcoa regularly left their lots sparsely attended with keys in the cars. In *He[r]genrether* the truck was left for a long period of time loaded with merchandise in an area well-known for its lawlessness. Plaintiff contends that leaving the lights on, door open and engine running significantly increased the risk of foreseeable harm. We do not agree. Although these circumstances could conceivably be attractive to a thief, they do not increase the foreseeable risk. The events took place in an alley way under circumstances where the driver expected to return immediately. Under these circumstances . . . what was reasonably foreseeable was that the driver would return momentarily. There is no more than a slight difference between simply leaving keys in an ignition, and the circumstances here, too slight to warrant acceptance as a 'special circumstance.' Finding 'special circumstances' here would be tantamount to an indirect elimination of the rule in *Richards* . . . ." (*Hosking, supra*, 98 Cal.App.3d at p. 104.)

The *Hosking* court, in a footnote, also questioned the continuing validity of the *Richards* rule in light of empirical evidence that car thieves are substantially more likely than other drivers to operate vehicles recklessly. (*Hosking, supra*, 98 Cal.App.3d at pp. 104–106; see also *Archer v. Sybert* (1985) 167 Cal.App.3d 722, 730 [213 Cal.Rptr. 486] [suggesting it may be time for the Supreme Court to reexamine *Richards*].)

The second, post-*Enders* police-pursuit case was *Avis, supra,* 12 Cal.App.4th 221. Like *Enders* and *Brooker*, it involved a car stolen from a private parking lot: the Avis check-in area at the San Francisco airport, an unfenced and poorly guarded lot where rental cars were regularly left unattended for as long as 45 minutes with the keys in them. Also like *Enders*, Avis had been warned about security problems, and other cars had been stolen from the check-in area. Seven days after the theft, the stolen car collided with the plaintiffs' car while being chased by police. The trial court denied Avis's motion for summary judgment; Avis petitioned the appellate court for a writ of mandate directing the lower court to grant the motion; and the appellate court issued the writ. "We conclude that Avis's conduct of parking its cars in a negligently attended lot with keys in the ignitions did not create a duty to control the conduct of a thief. It is true that the risk of theft increases when more cars are involved and when they are in a fixed location. Thieves may learn about the target cars and may find ways to defeat the security provided. But this increase in the risk of theft due to negligence of an owner of a fleet of cars is much like the increased risk associated with leaving keys in the ignition of a car left unattended on the street. It is not

equivalent to inviting or enticing an incompetent driver to tamper with a vehicle. These actions are not the 'special circumstances' which create a special relationship between or among the parties. Thus, they do not impose on the car owner the duty to control the actions of the thief." (*Avis, supra*, 12 Cal.App.4th at p. 233.)

In reaching this conclusion, the *Avis* court criticized the *Enders* decision, which it said had "used questionable reasoning and stretched the 'special circumstances' doctrine too far." (*Avis, supra*, 12 Cal.App.4th at p. 230.) As to the conflict between *Enders* and *Brooker*, the court found *Brooker* to be the better reasoned decision.

"Examining *Enders* in the light shed by *Ballard*, we conclude that *Enders*, not *Brooker*, misinterpreted *Richards*. Although *Richards* did not involve a police chase, injuries to motorists in police chases (as a general kind of harm) were as much a foreseeable result from leaving a key in the ignition (a category of negligence) in *Richards* as they were in *Enders*. Yet, for policy reasons the *Richards* court found no duty. Even the possibility of injury during a police chase was not the 'special circumstance' which would create a duty to protect a motorist from negligent driving by a thief.

"By focusing on foreseeability, the *Enders* court bypassed the important policy questions involved in the duty analysis. *Richards* and the decisions following it have confirmed that, however foreseeable car theft and an accident by the thief may be, leaving an ordinary automobile unattended on the street with a key in the ignition does not create a duty to protect other motorists from the negligent driving of a thief.

"We conclude that Avis's conduct of parking its cars in a negligently attended lot with keys in the ignitions did not create a duty to control the conduct of a thief." (*Avis, supra*, 12 Cal.App.4th at pp. 232–233.)

The trial court in the present case found the *Avis* decision to be conclusive. It explained: "The Court concludes that while it may have been foreseeable by Maaco that another vehicle might be stolen from its enclosed lot in a manner similar to that in which the Mustang had been stolen[,] this was, at most, an increase in the risk of theft of another vehicle and was not equivalent to inviting or enticing an incompetent driver to operate a vehicle. As a matter of law, the Court concludes that Maaco's actions in leaving keys in the vehicles within its fenced enclosure does not create a duty to protect other motorists from the negligent driving of a person operating a vehicle that has been stolen from Maaco's premises."

We exercise our independent judgment on review. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

The Mays begin their argument on appeal by asking us, in effect, to reassess the Supreme Court's duty analysis in *Richards*. They contend it was "highly foreseeable" a vehicle would be stolen from Maaco's lot and driven in a reckless manner;[4] that the risk of serious injury to third persons in that event was great; and that the additional burden on Maaco to prevent thefts, by removing the keys from the cars, would have been minimal.

The Mays are not the first to question the premise in *Richards* that a thief is no more likely to drive recklessly than a permissive user. The Supreme Court nonetheless has twice declined to reconsider the matter. (*Ballard, supra,* 41 Cal.3d at p. 572, fn. 5; *Palma, supra,* 36 Cal.3d at p. 186, fn. 13.)[5] We are, of course, bound by their decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ Further, by basing their argument entirely on the question of foreseeability, the Mays make the same mistake as the court did in *Enders* by overlooking the overarching policy considerations supporting the *Richards* decision. (See *Avis, supra,* 12 Cal.App.4th at pp. 232–233.) "[F]oreseeability alone is not sufficient to create an independent tort duty. ' "Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability." [Citation.]' [Citation.] Because the consequences of a negligent act must be limited to avoid an intolerable burden on society [citation], the determination of duty 'recognizes that policy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk.' [Citation.] '[T]here are clear judicial days on which a

---

[4] Foreseeability is established, the Mays assert, by Modesto Municipal Code section 3-2.814, which states in part:

"(a) Removing Ignition Key. No person driving or in charge of a motor vehicle shall permit it to stand unattended in any public place, or on any parking lot without first stopping the engine, locking the ignition and removing the ignition key from the vehicle. [¶] . . . [¶]

"(d) Violations. Any violation of the provisions of this section shall not mitigate the offense of stealing such motor vehicle nor shall such violation be used to effect a recovery in any civil action for theft of such motor vehicle, or the insurance thereon, *or have any other bearing in any civil action.* . . ." (Italics added.)

The court in *Richards* held that a similar ordinance, containing the same italicized language, properly had been excluded by the trial court as irrelevant. (*Richards, supra,* 43 Cal.2d at pp. 62–63.)

[5] The Mays also claim the subsequent adoption in California of the doctrine of comparative fault (see *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]) undermined the *Richards* decision insofar as *Richards* was founded on the belief it would be unfair to hold a vehicle owner liable for all the harm caused by a thief. That would be a determination for the Supreme Court to make, which, as we have said, has twice declined to reconsider its *Richards* decision.

court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for [an] injury.' [Citation.] In short, foreseeability is not synonymous with duty; nor is it a substitute." (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 552 [87 Cal.Rptr.2d 886, 981 P.2d 978].)

Finally, the Mays misapprehend the nature of the foreseeability test. The critical lesson to be derived from the Supreme Court's key-in-the-ignition decisions, they assert, is that "there is no broad or general rule of no duty" in such cases; instead the existence of a duty is a very fact-specific determination that will vary from case to case depending on the particular circumstances. "Essentially," the Mays conclude, " 'special circumstances' are whatever circumstances that are deemed to make the [vehicle] owner's conduct unreasonable." The rule, they seem to be saying, is that there is no rule.

If this were true, duty would be a factual determination for the trier of fact to make in every instance. But, as the court explained in *Ballard*, it is not true.

"Some confusion has arisen over the respective roles played by the court and the jury in determining liability in the *Richards v. Stanley, Richardson,* and *Hergenrether* context. The confusion may stem, at least in part, from the fact that the 'foreseeability' concept plays a variety of roles in tort doctrine generally; in some contexts it is a question of fact for the jury, whereas in other contexts it is part of the calculus to which a court looks in defining the boundaries of 'duty.'

"The question of 'duty' is decided by the court, not the jury. [Citations.] As this court has explained, 'duty' is not an immutable fact of nature ' "but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' [Citations.] In California, the general rule is that all persons have a duty ' "to use ordinary care to prevent others being injured as the result of their conduct. . . ." ' [Citations.] *Rowland* [*v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]] enumerates a number of considerations, however, that have been taken into account by courts in various contexts to determine whether a departure from the general rule is appropriate: 'the major [considerations] are *the foreseeability of harm to the plaintiff*, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered,

the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (Italics added [by the *Ballard* court].) [Citation.]   █   The foreseeability of a particular kind of harm plays a very significant role in this calculus [citation], but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.

"The jury, by contrast, considers 'foreseeability' in two more focused, fact-specific settings. First, the jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place. Second, foreseeability may be relevant to the jury's determination of whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury." (*Ballard, supra,* 41 Cal.3d at p. 572, fn. 6.)

█   The Supreme Court in *Richards* weighed these various considerations and determined that, as a general rule, the owner or bailee of an ordinary passenger vehicle does not owe a duty to third persons to protect them against the actions of a thief. While the court has since recognized an exception to the rule when special circumstances exist, this case does not fit within that exception. We see no significant difference between the circumstances in this case and those in *Avis,* where the court concluded "Avis's conduct of parking its cars in a negligently attended lot with keys in the ignitions did not create a duty to control the conduct of a thief." (*Avis, supra,* 12 Cal.App.4th at p. 233.) If anything, Maaco went to greater lengths to discourage theft than had Avis, and the thief's conduct here was the more unpredictable and extreme.

The concluding words of the *Avis* court bear repeating here. "We reach our conclusions with some reluctance because we understand the impact this ruling will probably have on the [plaintiffs]. They may have little chance of recovering from the real villain, [the thief], who probably has neither significant assets nor insurance coverage for accidents in stolen vehicles. However, the mere fact that the villain may be 'judgment proof' does not justify recovery against Avis, [the thief's] original victim." (*Avis, supra,* 12 Cal.App.4th at p. 233.)

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Vartabedian, Acting P. J., and Gomes, J., concurred.

A petition for a rehearing was denied October 16, 2006, and the opinion was modified to read as printed above. The petition for plaintiffs and appellants for review by the Supreme Court was denied January 17, 2007, S147894. Moreno, J., did not participate therein.