Filed 10/16/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HERMAN MURPHY et al., | B327197 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV08149) |
| v. | |
| MARQUES ALEXANDER PINA et al., | |
| Defendants and Respondents. | |

APPEALS from a judgment of the Superior Court of Los Angeles County, Jill Feeney, Judge. Affirmed.

Downtown L.A. Law Group, Igor Fradkin, Daniel Azizi; and Joseph S. Socher for Plaintiff and Appellant Herman Murphy.

Law Office of Stefon A. Jones and Stefon A. Jones for Plaintiff and Appellant Tinasha Sullivan.

Horvitz & Levy, Steven S. Fleischman, Scott P. Dixler; Matheny Sears Linkert & Jaime and Matthew C. Jaime for Defendants and Respondents Virginia Ann Pina and Brea Auto Body, Inc.

No appearance for Defendants and Respondents
Marques Alexander Pina and The Hertz Corporation.

———————————

Marques Pina stole a car from his grandmother's auto body shop. He later crashed the car with a passenger inside. The passenger, Jalen Murphy, suffered a traumatic brain injury. Around two and a half years later, Jalen died of a fentanyl overdose. His parents, plaintiffs and appellants Herman Murphy and Tinasha Sullivan, filed wrongful death actions against several defendants, including the respondents: Marques's grandmother, Virginia Ann Pina, and her business, Brea Auto Body, Inc.[1] The trial court granted defendants' motion for summary judgment and plaintiffs now appeal. Plaintiffs argue the trial court erred in concluding defendants had no duty to protect Jalen from Marques's theft of a vehicle and subsequent negligent driving, and there is a triable issue of fact as to whether defendants employed Marques and are therefore vicariously liable for his conduct. Plaintiffs also challenge two of the trial court's evidentiary rulings. They argue, in part, that the trial court should have considered hearsay evidence pursuant to *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931 (*Sweetwater*). We find no error and affirm.

---

[1] The other defendants named in plaintiffs' complaints are not parties to this appeal. Because Marques Alexander Pina and Virginia Ann Pina share a last name, and Herman Murphy and Jalen Murphy share a last name, we use their first names for clarity. No disrespect is intended.

## FACTUAL AND PROCEDURAL BACKGROUND
### *Underlying Incident*

Virginia is the owner of Brea Auto Body. Brea Auto Body had an arrangement with The Hertz Corporation (Hertz) that allowed the auto body shop's customers to rent Hertz cars directly from the Brea Auto Body site. Hertz representatives went to Brea Auto Body to execute the necessary paperwork and assist the shop's customers in renting the cars. Hertz provided the rental cars' keys to the customers. However, on occasion, a Hertz representative would leave the keys with a Brea Auto Body receptionist. The receptionist would place the keys in a key rack behind the reception counter and out of sight of any person standing in front of the counter. The key rack was not locked.

When a customer returned a Hertz vehicle, Virginia ensured the car was locked. She would store the car's keys on the key rack until a Hertz employee picked them up. Hertz representatives were allowed to enter the reception area and retrieve the keys to their cars. The Hertz vehicles were parked in front of the business, in an unfenced lot.

On December 24, 2016, a customer returned a rented Nissan Sentra. That night, Virginia had dinner with some of her family members, including her grandson Marques. When driving Marques and her granddaughter home, Virginia stopped at Brea Auto Body to use the restroom. Virginia unlocked the shop's door, turned off the shop's alarm system, and left her grandchildren to wait in the car. While Virginia was in the restroom, Marques went behind the reception desk to the rack where the shop stored the Hertz rental car keys. He took the key to the Nissan. Virginia later attested that she had not given Marques permission to take the key and was unaware that he

3

had done so.  When she came out of the restroom, her grandchildren were inside the shop.  They said they also needed to use the restroom.

At some point, Marques drove the Nissan away from the shop.  On January 6, 2017, he was driving the Nissan with Jalen as his passenger.  Marques lost control of the car and crashed it into the backyard of a residence.  Jalen suffered a traumatic brain injury.  Marques faced criminal charges.  He pled guilty to felony hit and run with injury.

Approximately two and a half years later, in August 2019, Jalen died of a fentanyl overdose.  Jalen's family alleged the brain injury he suffered in the crash caused him to commit suicide.

### The Lawsuits

In February 2020, Jalen's father, Herman Murphy, filed a complaint against Marques, Virginia, Brea Auto Body, and Hertz.[2]  Herman asserted two claims for wrongful death, one based on motor vehicle negligence and one on negligent entrustment.  In August 2021, Sullivan, Jalen's mother, filed her own complaint against Marques, Virginia, Brea Auto Body, and Hertz, which asserted the same two claims for wrongful death as Herman's complaint.  The two cases were later consolidated.

### Motion for Summary Judgment

Defendants moved for summary judgment, or, in the alternative, summary adjudication, of both complaints.  Defendants argued that summary judgment was proper because they were not vicariously liable for Marques's conduct and they owed no duty to Jalen.

---

[2]     Herman's complaint also named Jalen's mother, plaintiff Sullivan, as a nominal defendant and heir to Jalen.

4

Virginia submitted a declaration in support of the motion. She declared, among other things, that when Marques took the keys to the Nissan and got into the accident, he was neither an employee nor an agent of Brea Auto Body. He was also over the age of 18 and did not live with her. To Virginia's knowledge, Marques had never stolen a vehicle or caused an accident before. She did not believe he had a driver's license.

Herman and Sullivan filed separate oppositions. Sullivan argued there was a triable issue of fact regarding whether Marques was an employee, and the only evidence he was not an employee was Virginia's "self-serving statements" in her declaration. Sullivan also argued there was a triable issue of fact regarding whether defendants owed a duty to Jalen.

Sullivan relied on Virginia's deposition testimony to support her opposition. When Virginia was asked whether she ever paid Marques for work at Brea Auto Body, she answered: "Marques would come sometimes and just sweep around. All my grandkids have been to my shop, and all my grandkids have helped out at the shop, every one of them. [¶] . . . Marques is my grandson, he's helped at the shop. And if I ask him to sweep, or whatever, I give him a few dollars."

When asked how often Marques helped at the shop in 2016, Virginia responded, "I hadn't seen him back in 2016." She indicated that in 2016, she had not seen Marques before the family dinner on December 24. Virginia stated that before "Christmas" 2016, she had last seen Marques in 2014 when she went to visit him in Utah, where he was living at the time.

Virginia further testified that before the incident, she had never had a vehicle stolen from her shop, nor had any keys to Hertz cars ever gone missing. Brea Auto Body had also never

5

experienced a burglary. Friends and family, including Marques, would stop by the shop to visit. Before the incident, Marques had been in the portion of the shop where the receptionist's desk was located, but Virginia did not know if he was aware of the key rack.

In Herman's opposition, he argued defendants failed to carry their burden of proof as the moving party because they only submitted Virginia's declaration, which he asserted was based on legal conclusions. Herman further contended there were triable issues of fact regarding the negligent entrustment cause of action and whether defendants breached a duty to protect Jalen from Marques.

Herman relied on Virginia's deposition testimony indicating that defendants did not document which Hertz vehicles and keys were removed from the lot or returned to the lot. Virginia therefore did not realize that the Nissan was missing until after the car accident. Herman also proffered Virginia's testimony that, in high school, Marques got into a fight, used drugs, and was rebellious, so he was sent to school in Utah. Herman additionally submitted portions of Jalen's deposition testimony from a different lawsuit. Defendants asserted a hearsay objection to this evidence.

In November 2022, the trial court heard argument and granted defendants' motion for summary judgment. It also sustained defendants' objection to Jalen's deposition testimony, finding it was hearsay.

As to the first cause of action for wrongful death based on motor vehicle negligence, the trial court determined that Virginia's declaration stating Marques was not an employee of, agent of, or in a contractual relationship with Brea Auto Body

6

was sufficient to shift the summary judgment burden to plaintiffs. While plaintiffs had produced Virginia's testimony that Marques had helped at the shop by sweeping and she had given him a "few dollars," the trial court found that plaintiffs ignored Virginia's additional testimony that the first time she saw Marques in 2016 was Christmas, and before that she had not seen him since 2014.

As to plaintiffs' second cause of action for negligent entrustment, the trial court agreed with defendants that they had no duty to protect Jalen from Marques. The court reasoned that, absent special circumstances, the owner of a vehicle has no duty to protect third parties against the possible theft of the vehicle and resulting injuries, and the record did not establish special circumstances.

In January 2023, the trial court entered judgment in favor of defendants. Both plaintiffs timely appealed.

## DISCUSSION

## I. Summary Judgment Standard of Review

A defendant moving for summary judgment has the initial burden to make a prima facie showing that the plaintiff cannot establish one or more elements of his or her challenged causes of action or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (f)(1), (o), (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.) If the defendant meets this initial burden, the burden shifts to the plaintiff to produce evidence showing that a genuine issue of material fact exists, based on specific facts. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) A triable issue exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in

7

accordance with the applicable standard of proof.  [Fn. omitted.]"
(*Aguilar*, at p. 850.)  " 'A motion for summary judgment . . . is
properly granted only when "all the papers submitted show that
there is no triable issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law." '
[Citations.]"  (*Campbell v. FPI Management, Inc.* (2024) 98
Cal.App.5th 1151, 1161.)

We review a summary judgment ruling de novo,
" ' " 'considering all the evidence set forth in the moving and
opposing papers except that to which objections were made and
sustained.' " [Citation.]' " (*Gonzalez v. Mathis* (2021) 12 Cal.5th
29, 39.)  " 'We liberally construe the evidence in support of the
party opposing summary judgment and resolve doubts concerning
the evidence in favor of that party.  [Citation.]' [Citation.]"
(*Ibid*.)

## II. The Trial Court's Evidentiary Rulings Were Proper

### A. Relevant background

In a deposition of Jalen taken in a lawsuit he filed against
Marques and Hertz in September 2018, he testified as follows:

> "Q  Did you ever discuss with Mar[ques] Pena [*sic*],
> from the time you saw him drive that car up to the
> time of the incident, how it was that he was driving
> that vehicle?
> "A  Yes.
> "Q  What did he say?
> "A  He told me he got it for Christmas.
> "Q  Did he tell you who gave it to him?
> "A  He said the family.  His grandma and family
> members he was working with."

Defendants objected to this testimony as hearsay.  At the
hearing on summary judgment, plaintiffs contended the

8

testimony was not hearsay because it showed Marques's state of mind. The trial court disagreed, reasoning Marques's out-of-court statements to Jalen were offered for the truth of the fact that Virginia gave the car to Marques, and that he was working for her at the time of the accident. The trial court opined plaintiffs could have remedied the hearsay problem in various ways, including by deposing Marques. The court had twice granted plaintiffs a continuance to give them time to depose Marques.[3]

### B.    Standard of review

Sullivan argues that the proper standard for our review of the trial court's evidentiary rulings is de novo. Defendants contend our review is for an abuse of discretion, recognizing there is a split of authority on this issue, and asserting that the majority rule is abuse of discretion. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535; *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946.) We need not decide this issue. Under either standard, the trial court did not err in excluding Jalen's deposition testimony relaying Marques's out-of-court statements.

### C.    Jalen's deposition testimony

Statements "made other than by a witness while testifying at the hearing" and "offered to prove the truth of the matter stated" are hearsay and, "[e]xcept as provided by law," are inadmissible. (Evid. Code, § 1200, subds. (a), (b).)

---

[3]    At the beginning of the summary judgment motion hearing, Herman requested another continuance to depose Marques, who was incarcerated. The trial court denied the request as untimely and because plaintiffs did not comply with Code of Civil Procedure section 437c, subdivision (h). Plaintiffs do not challenge that ruling on appeal.

9

Sullivan concedes that Jalen's deposition testimony is hearsay. Yet, she contends the trial court should nonetheless have overruled defendants' objection and considered the hearsay statements pursuant to *Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th 931. Relying on the *Sweetwater* court's reasoning in the anti-SLAPP context, Sullivan asserts she could cure the hearsay problem at trial by calling Marques and Virginia as witnesses.

We reject this argument. In *Sweetwater*, our high court considered the "narrow question" of "what kind of evidence a court may consider in ruling on a pretrial anti-SLAPP motion in determining a plaintiff's probability of success." (*Sweetwater*, *supra*, 6 Cal.5th at p. 937.) The plaintiff's challenged evidence consisted of written plea forms of several individuals that included factual narratives attested to under penalty of perjury and excerpts from the grand jury testimony of several witnesses. (*Id*. at p. 939.)

The *Sweetwater* court's holding had two aspects. First, as to the form of evidence, the court held that "in determining a plaintiff's probability of success, the court may consider statements that are the equivalent of affidavits and declarations because they were made under oath or penalty of perjury in California." (*Sweetwater*, *supra*, 6 Cal.5th at p. 945.) Second, regarding the admissibility of the evidence, "the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an

10

evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Id*. at p. 949.)

As an initial matter, we note that *Sweetwater* concerned the consideration of evidence in connection with an anti-SLAPP motion. Accordingly, the court's reasoning was based, in part, on the procedural nature and underlying policies of the anti-SLAPP process. For example, emphasizing that an anti-SLAPP motion is filed at the outset of litigation, the court reasoned: "The [anti-SLAPP] law's central aim is 'screening out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery.' [Citation.]" (*Sweetwater*, *supra*, 6 Cal.5th at p. 943.) Given this timing, "[t]o strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial would not serve the SLAPP Act's protective purposes. Ultimately, the SLAPP Act was 'intended to end meritless SLAPP suits early without great cost to the target' [citation], *not* to abort potentially meritorious claims due to a lack of discovery." (*Id*. at p. 949.)

Moreover, two years before *Sweetwater*, our high court held that "[a] party may not raise a *triable* issue of fact at summary judgment by relying on evidence that will not be admissible at trial. (See [Code Civ. Proc.,] § 437c, subd. (c).)" (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 543.) The *Sweetwater* court favorably cited *Perry* and did not overrule or reject the *Perry* court's holding that evidence that was "incurably inadmissible at trial . . . could not properly be considered in ruling on a summary judgment motion." (*Sweetwater*, *supra*, 6 Cal.5th at p. 948.)

However, even if we were to assume the *Sweetwater* court's reasoning applies in the summary judgment context, we disagree that it suggests the trial court here should have considered Jalen's challenged deposition testimony in determining whether plaintiffs raised a triable issue of fact.

The challenged deposition testimony presents two levels of hearsay. (*People v. Orey* (2021) 63 Cal.App.5th 529, 550 ["double hearsay statement is admissible if each level of hearsay comes within an exception to the hearsay rule"].) We, like the trial court, focus on the second level of hearsay, Marques's purported statements to Jalen. As noted above, plaintiffs do not contend Marques's statements to Jalen fall under any hearsay exception or are otherwise admissible. Plaintiffs seek to offer Marques's statements to Jalen for their truth, namely that Marques's grandmother and family gave him the car, or that he was working for Virginia. Unlike the evidence at issue in *Sweetwater*, Marques's purported statements were not sworn testimony or statements made under oath. The *Sweetwater* court agreed with prior courts that " 'excluded evidence which would be barred at trial by the hearsay rule' " is a type of evidence that " 'cannot be used by the plaintiff to establish a probability of success on the merits because it could *never* be introduced at trial. . . .' " (*Sweetwater*, *supra*, 6 Cal.5th at p. 947.)

Sullivan contends she could call Marques as a witness at trial, or Virginia, to testify to the statement, thus "curing" any hearsay problem.[4] The court rejected a similar argument in

---

[4]     Jalen's testimony was that Marques made the challenged statements. He did not testify that Virginia made similar statements, or that Virginia had any knowledge of what Marques

12

*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750 (*Sanchez*). In *Sanchez*, the plaintiff supported his opposition to the defendants' anti-SLAPP motion with his own declaration. To demonstrate the merits of his defamation claim, the plaintiff declared that several journalists told him that one of the defendants made false and malicious statements about the plaintiff to them. (*Id.* at p. 760.) In response to the defendants' argument that this evidence was inadmissible hearsay, the plaintiff contended that under *Sweetwater*, "any hearsay problems could be cured at trial by calling the reporters as witnesses." (*Id.* at p. 761.)

The appellate court rejected the plaintiff's interpretation of *Sweetwater*. The court explained that in *Sweetwater*, the only examples of " 'curable' hearsay" were plea forms and grand jury transcripts which were given under oath or penalty of perjury and therefore fell under the anti-SLAPP statute's hearsay exception for affidavits and declarations, or sworn statements within the plea forms and grand jury transcripts that were potentially admissible at trial "because the original declarants could repeat the statements in live testimony, or because they fell within the hearsay exception for statements against interest." (*Sanchez*, *supra*, 80 Cal.App.5th at p. 775.)

In contrast, in *Sanchez*, there was no similar evidence. The court explained that "had the reporters submitted their own

_____

purportedly told Jalen. Sullivan does not explain how Virginia's testimony at trial could compensate for the fact that Jalen's testimony about what Marques told him is inadmissible hearsay. The failure to provide any legal argument to support the assertion regarding Virginia's potential testimony forfeits the point on appeal. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.) We therefore discuss only the possibility of Marques's trial testimony.

13

declarations attesting under penalty of perjury to the defamatory comments defendants purportedly made to them, or testified to those facts under oath in another proceeding, that evidence would be comparable to the plea forms and grand jury transcripts in *Sweetwater*. In those circumstances, the reporters' statements, as reflected in their declarations or testimony, would be 'made by competent witnesses with personal knowledge of the facts they swear to be true.' (*Sweetwater, supra*, 6 Cal.5th at pp. 944–945.) Those statements, moreover, likely would be admissible if the reporters repeated them at trial. The reporters' statements recounted in plaintiff's declaration, however, are insufficient to show 'that admissible evidence exists to prove plaintiff's claims' [citation], because they were not made under oath or penalty of perjury, and the hearsay rule bars plaintiff from testifying as to what the reporters told him to prove publication of purported defamation by defendants." (*Sanchez, supra*, 80 Cal.App.5th at pp. 775–776.)

The facts here are analogous. Plaintiffs did not submit a declaration or deposition testimony from Marques with the content of his purported statements to Jalen. The purported statements were not made under oath or penalty of perjury, and the hearsay rule bars consideration of Jalen's testimony about what Marques said to him to prove that Marques's grandmother or family gave him permission to drive the Nissan or that he was working for them at the time of the theft or the accident.

The *Sanchez* court further reasoned that "although under *Sweetwater* a plaintiff need not satisfy all preconditions to admissibility at the time of the anti-SLAPP hearing, the plaintiff nonetheless must demonstrate it is 'reasonably possible' the evidence 'will be admissible at trial.' (*Sweetwater, supra*, 6

14

Cal.5th at p. 947.)" (*Sanchez*, *supra*, 80 Cal.App.5th at p. 777.) The court concluded the "plaintiff's hope that the reporters will appear at trial and either confirm or deny the statements in his declaration is too speculative to demonstrate potentially admissible evidence in support of his defamation claim." (*Ibid*.)

The same analysis applies here with greater force in light of the procedural history of the case. Plaintiffs already had the opportunity to cure this hearsay defect. They had almost 15 months to depose Marques between the date defendants filed their summary judgment motion and the summary judgment hearing, and they also deposed Virginia. Plaintiffs were also given two continuances, in part to give them time to depose Marques. Yet, plaintiffs failed to obtain Marques's testimony. In contrast to a plaintiff opposing an anti-SLAPP suit, plaintiffs had ample time and the statutory authority to obtain admissible evidence, including Marques's confirmation or denial that he made the statements about which Jalen testified. The *Sweetwater* court's concern that the SLAPP Act was not intended to "abort potentially meritorious claims due to a lack of discovery" is inapplicable here. (*Sweetwater*, *supra*, 6 Cal.5th at p. 949.) And, as in *Sanchez*, plaintiffs' assertion that Marques would appear as a witness at trial and confirm or deny the statements Jalen attributed to him is too speculative to demonstrate potentially admissible evidence, as illustrated by the failure of such testimony to materialize in over a year of discovery.

*Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, does not call for a different conclusion. In *Harris*, the reviewing court determined the trial court should have considered an expert declaration submitted in support of the plaintiff's opposition to summary judgment, even though it

15

included new information that was not contained in the expert's deposition.  The court reasoned that there was no categorical bar to the challenged aspects of the expert's testimony and "no undisputed circumstances showing inadmissibility." (*Id*. at p. 603.)  Even though the expert's opinion was new, the trial court had little basis to conclude the opinion was " 'incurably inadmissible' at trial." (*Ibid*.)  For the reasons described above, the same cannot be said of the inadmissible hearsay plaintiffs sought to admit through Jalen's deposition testimony.  (See *Sweetwater*, *supra*, 6 Cal.5th at p. 942, quoting Evid. Code, § 300 [under the Evidence Code, hearsay is not admissible at trial unless an exception applies].)

As the court aptly observed in *Wong v. Stillwater Ins. Co.* (2023) 92 Cal.App.5th 1297, 1326, to allow the admission of hearsay testimony on the ground it could later be cured at trial to defeat summary judgment "would mean that regardless of the hearsay, regardless of its source, a person opposing summary judgment could 'testify' as to some hearsay and then search for something admissible to support it at trial.  This cannot be the law."

The trial court did not err.  Marques's out-of-court statements are inadmissible hearsay and thus are not sufficient to raise a triable issue of fact at summary judgment.  (*Forest Lawn Memorial-Park Assn. v. Superior Court* (2021) 70 Cal.App.5th 1, 8 [" 'A party may not raise a *triable* issue of fact at summary judgment by relying on evidence that will not be admissible at trial.' "]; *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1026–1027 ["hearsay is not admissible evidence and will not raise a triable issue defeating summary judgment"], disapproved on another ground in *Regents*

*of University of California v. Superior Court* (2018) 4 Cal.5th 607,
634, fn. 7.)

### D. Virginia's declaration

Herman argues that Virginia's declaration provides only
conclusory assertions, opinions, and ultimate facts regarding
Marques's employment.  He therefore contends it was insufficient
to shift the burden on summary judgment to plaintiffs on the
issue of whether Marques was defendants' employee.[5]  We
disagree.

" 'The same rules of evidence that apply at trial also apply
to the declarations submitted in support of and in opposition to
motions for summary judgment.  Declarations must show the
declarant's personal knowledge and competency to testify, state
facts and not just conclusions, and not include inadmissible
hearsay or opinion.' [Citation.]" (*Fernandez v. Alexander* (2019)
31 Cal.App.5th 770, 779.)  Virginia's declaration shows her
personal knowledge of whether Marques was employed by her
business.  She declared she is the owner of Brea Auto Body,
which she opened in 1979.  She also stated that when Marques
stole the Nissan's keys and crashed the car, he was not an

---

[5]     Sullivan did not object to Virginia's declaration in the trial
court.  She has thus forfeited her objection that Virginia's
declaration is "based on her opinion not fact or law." (*Hernandez
v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 282, fn. 2 [evidentiary
objections not raised in the trial court are waived].)  Defendants
argue that in the trial court, Herman never objected on the
ground that Virginia's declaration was conclusory; he only
objected that she lacked personal knowledge, and her declaration
was based on "legal conclusions."  Because his argument on
appeal is closely related to the objections he asserted in the trial
court, we exercise our discretion to reach its merits.

17

employee, agent of, or in a contractual relationship with Brea Auto Body. She identified her personal relationship with Marques as one of grandparent and grandchild. The owner of a family-owned shop would be expected to have personal knowledge of whether her family member is an employee or agent of the business.

Virginia's declaration provided sufficient information for the trial court to conclude her statements were based on personal knowledge and that they reflected facts, not unsupported conclusions. The trial court did not err in overruling Herman's objection to Virginia's declaration.

## III. There Is No Triable Issue Regarding Whether Defendants Were Vicariously Liable for Marques's Negligence

Plaintiffs contend there is a triable issue of fact as to whether defendants employed Marques, he was their agent, or he was in a contractual relationship with them. We disagree.

An employer may be found vicariously liable for an employee's tort under the doctrine of respondeat superior if the tort was committed within the scope of employment. (*Montague v. AMN Healthcare, Inc.* (2014) 223 Cal.App.4th 1515, 1520.) In addition, a principal may be liable for the conduct of its agent if the principal directly authorizes the tort or crime, the agent commits the act in the scope of employment and in performing service on behalf of the principal, or the principal ratifies the agent's conduct after the fact. (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 969.) An employer "is responsible to third persons for the negligence of [its] agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part

18

of the transaction of such business." (Civ. Code, § 2338.)

The moving defendants presented Virginia's declaration stating that Marques was not an employee, agent, or in a contractual agreement with Brea Auto Body shop. Herman argues that Virginia's declaration did not provide sufficient detail to establish that Marques was not an employee because "there is no discussion of whether Marques had ever performed work at the body shop, when he did such work, if he was paid for such work, or any terms of such work." However, Herman provides no legal support to suggest such detail is required where, as here, defendants' evidence is that Marques was *not* an employee and that he was providing *no* services to defendants at the relevant time period. Virginia's declaration was sufficient to shift the burden to plaintiffs to raise a triable issue of fact.

In her opposition, Sullivan submitted Virginia's deposition testimony stating that sometimes Marques would sweep or help at the shop, "[a]nd if I ask him to sweep, or whatever, I give him a few dollars." Plaintiffs point out that under Labor Code section 1132.4, an employee is defined as "any person who performs services for wages or salary under a contract of employment, express or implied, for an employer." However, Virginia testified that she had not seen Marques since 2014, in Utah, and the theft and accident occurred in late 2016 and early 2017, respectively. Plaintiffs failed to provide evidence that Marques worked at the shop, or was otherwise its employee or agent, at any time near Marques's theft. Rather, they submitted evidence that Virginia had not seen Marques for two years. Thus, even assuming Marques was once an employee of either Brea Auto Body, or Virginia in her personal capacity as Herman now appears to argue on appeal, the uncontroverted evidence is

19

that he was no longer one for at least two years before the incident.[6]

Herman argues that the mere passage of time does not mean the employment relationship ended. He contends that Virginia's testimony about paying Marques was in the present tense, such that it implied the employment relationship was ongoing. Summary judgment, however, cannot be overcome by mere speculation that Virginia may have employed Marques at the time of the theft, where there is evidence he was not an employee. (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 226 [" 'Responsive evidence that "gives rise to no more than mere speculation" is not sufficient to establish a triable issue of material fact.' "].)

The cases Herman cites to support his contention that employment may have been ongoing presented facts materially different from those in the case at bar. In *Young v. RemX Specialty Staffing* (2023) 91 Cal.App.5th 427, the court considered whether a temporary staffing agency employee was "discharged" when she was released from a temporary assignment at a bank. The bank ended the assignment, not the agency. The Labor Code defines a temporary agency employer as

---

[6] Even if defendants' evidence did not directly address the question of whether Virginia was Marques's employer in her personal capacity—a theory not expressly alleged in the complaint—plaintiffs' own evidence established there was no triable issue of fact on that issue. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750 [a plaintiff's summary judgment opposition evidence may cure the evidentiary gaps in a defendant's moving papers when "coupled with the evidence proffered by defendant," and shift the burden of proof to the plaintiff because trial court must consider all of the papers before it]; see *id*. at pp. 749–751.)

having " 'the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer.' ([Lab. Code,] § 201.3, subd. (a)(1)(C).)" (*Young*, at p. 434.) The court held that when the bank told the employee not to return, she was not "discharged" within the meaning of Labor Code section 201.3, subdivision (b)(4), because no employment relationship existed with the bank. (*Young*, at pp. 433, 434.) *Young* concerned the temporary agency employment context and offers no support for the proposition that, after an informal working arrangement, Marques remained defendants' employee unless he was formally discharged.

Similarly, another case relied on by Herman, *Elliot v. Spherion Pacific Work, LLC* (C.D.Cal. 2008) 572 F.Supp.2d 1169, is inapposite as it concerned temporary employees at temporary agencies. The other two cases Herman cites are equally inapplicable. (*Mullins v. Rockwell Internat. Corp.* (1997) 15 Cal.4th 731, 738 [for purposes of constructive discharge action, the statute of limitations begins to run at "actual termination"]; *Mooney v. County of Orange* (2013) 212 Cal.App.4th 865, 876 [employee on disability leave not dismissed under county employees' retirement law because never formally terminated].)

Instead, *Smith v. Superior Court* (2006) 39 Cal.4th 77, is closer to the facts here. *Smith* held that a plaintiff hired for only one day of work as a model at a hair show was discharged after completing that task because an employer "releases an employee upon the employee's completion of the particular job assignment or time duration for which he or she was hired." (*Id.* at p. 90.) Analogously, when Virginia paid her grandson to sweep the shop, she would have released him from work after that particular

21

task.  Plaintiffs proffered no evidence suggesting an ongoing, indeterminate employment relationship.

There is no triable issue of fact as to whether Marques was an employee or agent, or in a contractual relationship with Virginia or Brea Auto Body, in December 2016 or January 2017, such that plaintiffs could hold defendants vicariously liable for Marques's negligence.

## IV.    There Is No Triable Issue of Fact Regarding Direct Negligence Because Defendants Did Not Owe a Duty To Jalen

The trial court also granted summary judgment on plaintiffs' second cause of action for negligent entrustment, concluding that defendants had no duty to protect Jalen from Marques's conduct.  On appeal, plaintiffs have abandoned any challenge to the trial court's ruling on the second cause of action. However, Herman contends his complaint also encompassed a direct negligence theory, and the trial court erred in concluding summary judgment was warranted based on the lack of duty.  We find no error.

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'  [Citation.]  Recovery for negligence depends as a threshold matter on the existence of a legal duty of care."  (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).)  " '[T]he existence and scope' of the defendant's duty is one of law to be decided by the court, not by a jury, and therefore it generally is 'amenable to resolution by summary judgment.'  [Citation.]"  (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004.)

"[A]s a general matter, there is no duty to act to protect others from the conduct of third parties."  (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235.)  However, "[i]n a case involving harm caused by a third party, a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a 'special relationship' with either the victim or the person who created the harm."  (*Brown, supra*, 11 Cal.5th at p. 215.)

Herman does not assert there was a "special relationship" between defendants and Marques, or defendants and Jalen.  Instead, he asserts that "special *circumstances*" exist which warranted the recognition of a legal duty that defendants owed to Jalen.  We conclude that the special circumstances doctrine did not apply here to impose a duty on defendants to protect Jalen.

### A.      Special circumstances doctrine

In *Richards v. Stanley* (1954) 43 Cal.2d 60 (*Richards*), the California Supreme Court established the rule that "[a]bsent ' "special circumstances," ' the owner or bailee of a motor vehicle has no duty to protect third persons against the possibility a thief will steal the vehicle and injure them with it."  (*May v. Nine Plus Properties, Inc.* (2006) 143 Cal.App.4th 1538, 1541 (*May*).)  The *Richards* court held that the owner of a car who left it unattended and unlocked, with the key in the ignition, lacked a duty to a motorcyclist who was injured when a thief stole the vehicle and then struck the motorcyclist.  (*Richards*, at pp. 61, 65–66.)

While several courts have distinguished *Richards*, we disagree with Herman's assertion that the case is no longer good law, or that it was implicitly overruled by *Rowland v. Christian* (1968) 69 Cal.2d 108.  In *Cabral v. Ralphs Grocery Co.* (2011) 51

23

Cal.4th 764, 778, our high court explained that *Richards*'s "limitation on the duty of a vehicle owner 'to protect third parties from the unauthorized use of the vehicle by another' . . . [is] derived from the principle that in the absence of a special relationship there is ordinarily no duty to control the dangerous conduct of another person . . . ." This principle remains the law of this state and *Richards* is consistent with that principle, even though courts have recognized the holding of *Richards* may not apply in all factual circumstances.[7]

A year after *Richards*, our high court indicated that in some cases, "special circumstances" exist that create a foreseeable risk of an unattended vehicle being tampered with, potentially causing injury, and therefore creating a duty to use reasonable care to prevent injury to a third party. (*Richardson v. Ham* (1955) 44 Cal.2d 772, 776 (*Richardson*).) *Richardson* concerned a bulldozer left unattended and insufficiently locked. Several intoxicated men discovered the bulldozer and drove it, causing substantial property damage and injuries. (*Id.* at pp. 774–775.) In distinguishing *Richards*, the court reasoned that, unlike an automobile, the "bulldozers aroused curiosity and attracted spectators," including persons who climbed on them. The evidence was "sufficient to justify the conclusion that there was a reasonably foreseeable risk that defendants' bulldozers might be tampered with when left unattended." (*Id.* at p. 776.)

---

[7]	Although some courts have suggested portions of the *Richards* court's reasoning should be reexamined, the California Supreme Court has declined to reconsider the case. We remain bound by the decision. (See *May, supra,* 143 Cal.App.4th at p. 1554.)

Since *Richards* and *Richardson*, courts have recognized the existence of "special circumstances" in two situations: (1) cases in which a defendant left the keys inside an unlocked car *and* it was foreseeable the car might be stolen due to the circumstances of the area in which car was left, or something encouraged the public to tamper with the vehicle, and (2) cases involving construction or similar vehicles that pose a danger greater than an ordinary vehicle and give rise to more curiosity from the public than an ordinary vehicle. (See, e.g., *Ballard v. Uribe* (1986) 41 Cal.3d 564, 573 [aerial manlift]; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 184–186 [large commercial truck parked overnight in high crime area, unlocked, with keys inside]; *Hergenrether v. East* (1964) 61 Cal.2d 440, 442, 443, 445 [unlocked two-ton truck left with keys in ignition and overnight in "skid row" neighborhood known for arrests due to theft, including of automobiles, "drunkenness," and "disorderly conduct"]; *Richards*, *supra*, 43 Cal.2d at p. 66 [in dicta, describing possible duty where vehicle left with keys in ignition in front of a school where "irresponsible children" might reasonably be expected to tamper with it]; *Richardson*, *supra*, 44 Cal.2d at p. 776 [bulldozer]; *Murray v. Wright* (1958) 166 Cal.App.2d 589, 592 (*Murray*) [keys purposely left in all unlocked cars on used car lot at all times, lot open to public and unattended, done purposefully to "encourage" public to "operate the vehicles"].)

**B.     No special circumstances are present here**

The evidence here does not establish special circumstances that made the " 'foreseeable risk of harm imposed [by defendants' actions] unreasonable.' " (*Carrera v. Maurice J. Sopp & Son* (2009) 177 Cal.App.4th 366, 383.) Defendants did not leave the keys inside the Hertz rental cars, or in an area open to the public.

It is undisputed that the keys were left on a rack behind a reception area, within the locked shop, which was protected by an alarm system. Although the location of the keys within the shop was not locked, it was not visible to individuals in front of the reception area. Keys had never gone missing. No vehicle had ever been stolen from the shop. The shop had never been burglarized. There is no evidence that it was in a high-crime area. There was no evidence that Virginia's family members or friends who visited the shop ever stole anything, and no evidence that Virginia had knowledge of any person in any way affiliated with her family or the business stealing a car or causing an accident, including Marques.

Herman attempts to distinguish *Richards*—involving the more reckless circumstance of an unlocked vehicle with the key in the ignition—because Virginia knew her grandson was rebellious and had used drugs. He also argues she should have known something was amiss when she asked Marques to wait in the car, but he came inside the shop. Nothing about these facts indicated that Marques would steal a car from his own grandmother's shop and subsequently drive it in a manner to cause injury to others. Moreover, " 'a court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' " (*May*, *supra*, 143 Cal.App.4th at p. 1556.)

We find persuasive *Avis Rent a Car System, Inc. v. Superior Court* (1993) 12 Cal.App.4th 221 (*Avis*), which also involved a

26

stolen rental car and a thief who caused a car accident. Avis, a rental car company, had a policy of leaving keys in its rental cars for up to 45 minutes during its check-in process at an airport. There was no fence or wall around the check-in lot, and no security guards or gates. (*Id.* at p. 223.) Thieves had previously stolen cars from the check-in area, and Avis had been warned of security problems. (*Ibid.*) The court held there were no special circumstances to create a duty to the third party injured in the accident, reasoning that an ordinary vehicle was involved (not a heavy construction vehicle) and there was no invitation or enticement to the general public to steal the cars. (*Id.* at pp. 230, 233; see also *May*, *supra*, 143 Cal.App.4th at pp. 1542–1543, 1556 [no special circumstances in case involving vehicle stolen from autobody shop, in which car was left unlocked with keys in ignition, behind a fence, despite history of vehicle theft from that lot].)

Under *Richards* and *Avis*, we conclude that special circumstances do not exist here. Unlike in those cases, here the keys were kept in a locked shop, on a rack not visible to someone in front of the reception desk. There had been no prior car thefts, and there is evidence that the vehicles were kept locked. There is no evidence of warning signs of theft or security problems.

Herman contends that two cases, *Murray*, *supra*, 166 Cal.App.2d 589, and *Enders v. Apcoa, Inc.* (1976) 55 Cal.App.3d 897 (*Enders*), are consistent with a finding of special circumstances here. We disagree.

In *Murray*, the defendants, used car dealers, had a policy of leaving all their cars in an unlocked lot, unattended and open to the public, with the keys in the ignition, to invite the public to try the vehicles. The court found special circumstances, reasoning

27

"the instant case presents a factual situation far more serious than the parking of a single car on a city street as in the *Richards* case. Here it is alleged that defendants purposely left the keys in the ignitions of all vehicles parked on their lot which was at all times open and unattended, in order to encourage the general public to enter the lot, examine and operate the vehicles, and that they did so 'without regard for the fitness or competence of said general public so to do.' It is further alleged that this practice was a matter of common knowledge of the public . . . ." (*Murray*, *supra*, 166 Cal.App.2d at p. 592, italics added.) Thus, in *Murray*, the defendants were inviting the public to tamper with the vehicles, similar to the cases involving heavy equipment. Here, Virginia ensured the Hertz cars were locked and kept the keys in a locked and alarmed shop at the time of the theft, and out of view of the general public when the shop was open.

In *Enders*, the defendant stole a car from a parking lot and caused a collision. The injured party sued Apcoa, the parking lot operator. The court determined there were special circumstances based on the parking lot's routine practice of leaving the cars unlocked and with the keys in the ignition, without guarding against theft; Apcoa's history of vehicle theft in its lots, specifically 12 stolen cars from its 68 lots in the three previous years; and empirical evidence that it was foreseeable a stolen vehicle would be involved in an accident. (*Enders*, *supra*, 55 Cal.App.3d at pp. 904–906; but see *Avis*, *supra*, 12 Cal.App.4th at pp. 230–232 [criticizing *Enders*].) Here, the key was not left in the ignition of an unlocked vehicle, and there had been no previous auto thefts from the shop. We do not find *Enders* persuasive in this context.

The special circumstances doctrine does not apply on the record here. Because we find no special relationship or circumstances, we need not consider the *Rowland* factors or the parties' related arguments.[8] The trial court properly granted summary judgment.

---

[8] The California Supreme Court has rejected the argument that "even if the defendant lacks any special relationship with the parties and there are no other circumstances that would give rise to an affirmative duty to protect, such a duty may nonetheless arise after considering the policy factors set out" in *Rowland*. (*Brown, supra*, 11 Cal.5th at p. 217.)

## DISPOSITION

We affirm the judgment.  Defendants Virginia Ann Pina and Brea Auto Body, Inc., are awarded their costs on appeal.

## CERTIFIED FOR PUBLICATION

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.